UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE RAYMOND BOUDREAU,<br><br>              Plaintiff,<br><br>       v.<br><br>KILOLO KIJAKAZI,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>              Defendant. | Case No. 1:20-cv-00470-HBK<br><br>OPINION AND ORDER TO REMAND CASE TO COMMISSIONER [2]<br><br>(Doc. No. 18) |

Maurice Raymond Boudreau ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 18, 21-22). For the reasons stated, the Court orders this matter REMANDED for further administrative proceedings.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 23).

## I. JURISDICTION

Plaintiff protectively filed for disability insurance benefits on September 19, 2012, alleging a disability onset date of November 11, 2001. (AR 184-92). Benefits were denied initially (AR 83-87) and upon reconsideration (AR 89-94). A hearing before an administrative law judge ("ALJ") was held on May 8, 2014. (AR 42-59). Plaintiff did not testify at the hearing and was represented by counsel. (*Id.*). The ALJ denied benefits (AR 16-41) and the Appeals Council denied review (AR 3-6). On August 23, 2018, the United States District Court for the Eastern District of California adopted findings and recommendations remanding the case for further proceedings. (AR 1293-1318). On October 16, 2018, the Appeals Council vacated the ALJ's finding, and remanded for further administrative proceedings. (AR 1330). On June 11, 2019, Plaintiff appeared for an additional hearing before the ALJ, and the disability onset date was amended to April 7, 2005. (AR 1243-75). The ALJ denied benefits (AR 1220-42) and the Appeals Council denied review. (AR 1214-19). The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 64 years old at the time of his second hearing. (*See* AR 1246). He graduated from high school. (AR 1246). During the relevant period Plaintiff was living with his wife. (AR 1253). He has work history as a real estate agent. (AR 1249-50). Plaintiff testified that he wasn't able to work during the adjudicatory period because of depression and the stress of being able to "produce" as a real estate agent. (AR 1251, 1253). He conceded to using alcohol and methamphetamines during the relevant period. (AR 1252). Plaintiff testified that even without substance use he was unable to socialize and isolated, had difficulty doing simple and complex projects, lacked trust in authority figures and supervisors, had an inability to follow directions, had difficulty being around people he doesn't know, and only left his house to go to the grocery store, the doctor, and AA meetings where he kept to himself. (AR 1253, 1257-63). He reported

that he was treated for PTSD due to being assaulted while he was in the military, and he missed days of work because of depression at his last job, which was part of the reason he was fired from his real estate job. (AR 1263).

### III.   STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment

must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant

work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits."  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) ).  When there is medical evidence of drug or alcohol addiction (DAA), the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability.  20 C.F.R. §§ 404.1535(a), 416.935(a).  In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling.  20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).  If the remaining limitations would not be disabling, DAA is a material contributing factor to the determination of disability.  *Id*.  If the remaining limitations would be disabling, the claimant is disabled independent of the DAA and the addiction is not a material contributing factor to

1 disability. *Id.* Plaintiff has the burden of showing that DAA is not a material contributing factor

2 to disability. *See Parra*, 481 F.3d at 748.

### V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his amended onset date of April 7, 2005 through his date last insured of December 31, 2007. (AR 1225). At step two, through the date last insured, the ALJ found that Plaintiff has the following severe impairments: alcohol dependence; amphetamine dependence; marijuana dependence; post-traumatic stress disorder (PTSD); and major depressive disorder. (AR 1226). At step three, through the date last insured, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment both with and without the substance use disorders. (AR 1226, 1230). The ALJ then found that, through the date last insured, based on all of the impairments including the substance use disorders, Plaintiff has the RFC to

> perform a full range of work at all exertional levels but with the following non-exertional limitations: he was limited to non-complex and routine tasks. He was capable of responding appropriately to changes in a routine work setting only. His interaction with coworkers was limited to only occasional work-related, non-personal, and non-social interaction involving no more than a brief exchange of information or hand-off of product. He could not perform highly time-pressured tasks such that the claimant was limited to generally goal-oriented work only. In addition, he would miss 2 days of work per month.

(AR 1226).

The ALJ further found that, through the date last insured, if Plaintiff stopped the substance use, he would have the RFC to

> perform a full range of work at all exertional levels but with the following non-exertional limitations: he would be limited to non-complex and routine tasks. He would be capable of responding appropriately to changes in a routine work setting only. His interaction with coworkers would be limited to only occasional work-related, non-personal, and non-social interaction involving no more than a brief exchange of information or hand-off of product. He would not be able to perform highly time-pressured tasks such that the claimant would be limited to generally goal-oriented work only.

(AR 1232). At step four, through the date last insured, the ALJ found that Plaintiff was unable to

perform any past relevant work both with and without the substance use disorders. (AR 1228, 1236). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, including substance use disorders, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 1229). However, the ALJ found that if Plaintiff stopped substance use, considering Plaintiff's age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that Plaintiff could perform, including cleaner, industrial, laborer, stores, and cleaner II. (AR 1236). Therefore, the ALJ concluded that substance use disorder was a contributing factor material to the determination of disability because the claimant would not have been disabled if he stopped the substance use, and that, because the substance use disorder was a contributing factor material to the determination of disability, Plaintiff was not disabled within the meaning of the Social Security Act at any time from the amended alleged onset date through the date last insured. (AR 1236-37).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims; and
2. Whether the ALJ properly weighed the medical opinion evidence and formulated the assessed RFC.

(Doc. No. 18 at 22-34).

## VII.   DISCUSSION

**A. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). "The claimant is not required to show that his impairment

could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that if Plaintiff stopped substance abuse, his medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. (AR 1232). First, the ALJ cited two treatment records that indicated Plaintiff's medications "helped reduce his mental symptoms." (AR 1233). A favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (Conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits). In support of this finding, the ALJ relied entirely on Plaintiff's report in March 2006 that medication "helped to reduce his PTSD/anxiety symptoms," and his report in January 2006 that his medications "help with reduction/relief of disturbing symptoms of his condition." (AR 568, 572). However, it is

8

well settled in the Ninth Circuit that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 795 F.3d 995, 1017 (9th Cir. 2014).

The Court's review of the record indicates that the March 2006 evaluation cited by the ALJ also noted that even with medication Plaintiff was still feeling depressed "with irritability and anger dyscontrol" and his mood "fluctuated from moderate to severe"; Plaintiff missed multiple appointments in 2006; and in June 2006 he reported that even with medication he still felt depressed with nightmares and bad dreams. (AR 565-69). Moreover, after his inpatient treatment and subsequent enrollment in a PTSD treatment program in 2005, Plaintiff was voluntarily readmitted to inpatient treatment in May 2008. (*See* Tr. 399-400, 405, 552, 701). Thus, when viewing the record as a whole, the two isolated instances of improvement cited by the ALJ did not rise to the level of a clear and convincing reason to discount Plaintiff's symptom claims. *See Garrison*, 795 F.3d at 1017 ("Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms"); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Second, the ALJ generally found that Plaintiff "continued to abuse substances, even though he was educated on their harmful effects. Through the date last insured, his continued substance use demonstrated a possible unwillingness to do what was necessary to improve his condition." (AR 1233). As an initial matter, while it is proper for the ALJ to consider inconsistencies in Plaintiff's substance abuse reporting, *Thomas*, 278 F.3d at 959, here, the ALJ fails to explain how the mere fact that Plaintiff used substances during the relevant period, standing alone, rises to the level of substantial evidence to discount his symptom claims.

9

*Holohan*, 246 F.3d at 1208 (ALJ must specifically identify the statements he finds not to be credible, and the evidence that allegedly undermines those statements). Unexplained, or inadequately explained, failure to follow a prescribed course of treatment may be the basis for rejecting Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, in support of this finding, the ALJ cites to a single report by Plaintiff during the relevant period that he drank alcohol, and to a single treatment record advising Plaintiff to maintain sobriety. (AR 558, 569). However, as argued by Plaintiff, the "ALJ's assumption that Plaintiff was unwilling to improve his condition is belied by the record. Plaintiff voluntarily sought psychiatric hospitalization on numerous occasions and attended outpatient programs, [and he] tried to stop using substances numerous times and results of toxicology testing were mostly negative." (Doc. No. 18 at 33; AR 345-46, 399-400, 405, 552, 701). Moreover, Plaintiff notes that the record includes evidence that his increased substance use coincided with his PTSD diagnosis. (Doc. No. 18 at 33 (citing Tr. 372)). The Ninth Circuit has cautioned that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Based on the foregoing, the ALJ's brief reference to an alleged "unwillingness" by Plaintiff to improve his condition, based on a single report of substance use during the relevant adjudicatory period, does not rise to the level of a clear and convincing reason, supported by substantial evidence, to the ALJ to reject the entirety of Plaintiff's symptom claims.

Third, the ALJ found Plaintiff's "daily activities were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (AR 1233). The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or

10

when activities "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012)(internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a). In support of this finding, the ALJ generally cites to Plaintiff's ability to do personal care, prepare simple meals, clean, do laundry, use public transportation, ride a bicycle, pay bills, use a checkbook and count change, watch movies, and shop in stores. (AR 263-71, 558, 562-63, 566, 1233). Defendant generally concedes that "these activities are not evidence of full-time work," but argues "they are evidence that Plaintiff was more functional than he alleged." (Doc. No. 21 at 22). Plaintiff argues this is "not an entirely accurate summary of Plaintiff's activities," because he also reported that he rode his bicycle and took public transportation because driving made him anxious, he shopped quickly because crowds made him uneasy, and the other activities cited by the ALJ are limited and performed at home. (Doc. No. 18 at 34 (citing AR 264-66). The Court agrees.

Plaintiff testified that he has a difficult time socializing with people he doesn't know, taking directions from a supervisor, and working with others. (AR 1257-58). He also reported that during the relevant adjudicatory period he only left the house to go to the grocery store once every two weeks, to go to the doctor every 90 days, and to go to AA meetings once a week where he sat by himself and "didn't say much." (AR 1260-62). In the function report cited by the ALJ, Plaintiff similarly reported that he was unable to be around people, prepared food that required no effort, did house and yard work minimally "when necessary," shopped quickly because crowds make him "uneasy," avoided contact with others and isolated at home, had anger and trust issues so he does not socialize with others, had trouble concentrating, was overwhelmed when following written or spoken instructions, and did not get along with authority figures. (AR 263-69). In considering Plaintiff's symptom claims, the ALJ must specifically identify the statements he finds not to be credible, and the evidence that allegedly undermines those statements. *Holohan*, 246 F.3d at 1208. "To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806

F.3d 487, 494 (9th Cir. 2015) (noting the ALJ did not specifically identify any inconsistencies between the claimant's testimony and the record; rather, "she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination."). Here, the ALJ did not identify the specific testimony that she found not to be credible, nor did she offer explanations for why the cited evidence of Plaintiff's ability to perform basic activities of daily living undermines Plaintiff's symptom claims, particularly as to his ability to be around people and take direction from authority figures. Thus, the ALJ's finding that Plaintiff's daily activities were inconsistent with his claimed limitations was not a clear and convincing reason, supported by substantial evidence, to discount his symptom claims.

Fourth, the ALJ cited objective evidence from the adjudicatory period in support of his finding that the medical evidence of record does not support Plaintiff's allegations of totally incapacitating symptoms. (AR 1233, 1235). This evidence includes mental status examinations from Plaintiff's inpatient treatment that found Plaintiff exhibited cooperative behavior, normal psychomotor activity, euthymic mood, appropriate affect, normal speech, linear thought process, normal thought content, normal perceptions, and intact cognition. (AR 575-76, 664-65, 1233). However, the ALJ also noted that at discharge from treatment Plaintiff had anxious mood, blunted affect, monotonous and latent speech, as well as normal psychomotor activity, good eye contact, and linear thought process; and "even when [Plaintiff] was using substances" mental status examinations found fair impulse control, adequate eye contact, cooperative demeanor, and denied homicidal and suicidal ideation. (AR 398, 558 (affect is constricted with underlying dysphoric mood), 562-63, 566 (affect is constricted with underlying dysphoric mood), 569 (mood fluctuating from moderate to severe), 571 (mood is described as severely depressed), 1233). Moreover, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective evidence, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits *solely* because the degree of pain alleged is not supported by objective medical evidence. (Doc. No. 17 at 26) (citing *Rollins*, 261 F.3d at 857 (emphasis added))); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601 (9th Cir. 1989). As discussed above, the additional reasons given by the ALJ for

12

discounting Plaintiff's symptom claims were not supported by substantial evidence. Thus, because lack of corroboration, the objective evidence cannot stand alone as a basis for rejecting Plaintiff's symptom claims and the ALJ's finding is inadequate.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims. On remand, the ALJ must reconsider Plaintiff's symptom claims.

### B. RFC / Medical Opinions

Plaintiff argues the assessed RFC is "based on insubstantial evidence and legal error" because the ALJ rejected the medical opinions of testifying expert Dr. Nancy Winfrey, examining provider Dr. James A. Moses, and treating provider Dr. Ashok Rao. (Doc. No. 18 at 22-30). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence).

Because the analysis of the RFC is dependent on the ALJ's reevaluation of Plaintiff's symptom claims, the Court declines to address these challenges in detail here. However, the Court does briefly note that the ALJ gave several identical reasons for rejecting Dr. Moses's evaluation, rejecting Dr. Rao's opinion, and assigning different weight to portions of Dr. Winfrey's testifying opinion. (AR 1233-34). These reasons, while not exhaustive with to regard to each respective opinion, consisted of general references to (1) Plaintiff's "generally adequate mental functioning" when he was "presumably sober," (2) two treatment records reflecting that Plaintiff's psychiatric medications helped reduce his mental symptoms, and (3) Plaintiff's "generally adequate activities of daily living." (*Id.*). The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *Orn*, 495 F.3d at 631; *see also Batson*, 359 F.3d at 1195 (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings). Moreover, "[i]mpairments that can be controlled effectively with medication are not disabling for the

13

purpose of determining eligibility for SSI benefits." *See Warre*, 439 F.3d at 1006; *see also Sehovic*, No. EDCV 19-00953-AS, 2020 WL 3511572, at *6 (C.D. Cal. June 29, 2020) (finding ALJ provided clear and convincing, specific and legitimate reasons for assigning little weight to physician's opinion where claimant's pain symptoms and fibromyalgia were adequately managed with medication). And finally, an ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 601-02 (1999).

However, when considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Brown-Hunter*, 806 F.3d at 495 (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. Here, the ALJ arguably fails to state with requisite specificity how the specific limitations assessed by these providers are inconsistent with the medical evidence and Plaintiff's daily activities. Particularly in light of the need to reconsider Plaintiff's treatment claims, as discussed in detail above, the ALJ must reconsider the medical opinion evidence and reassess Plaintiff's RFC on remand.

**C. Remedy**

Plaintiff contends that the Court should remand for a payment of benefits. (Doc. No. 18 at 35). The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the

delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court remands this case for further proceedings. On remand, the ALJ should reevaluate Plaintiff's symptom claims, as well as all relevant medical opinion evidence. The ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
2. An application for attorney fees may be filed by separate motion.
3. The Clerk shall terminate any motions and deadlines and close this case.

Dated: __March 20, 2022__

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE